## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WANDA H. WOODARD,       )
                          )
          Plaintiff,     )
                          )
     v.                 )      1:14CV882
                          )
CAROLYN W. COLVIN,       )
Acting Commissioner of Social   )
Security,                 )
                          )
          Defendant.     )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Wanda H. Woodard, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (See Docket Entry 1.) The Court has before it the certified administrative record (Docket Entry 7 (cited herein as "Tr. ")), as well as the parties' cross-motions for judgment (Docket Entries 9, 11; see also Docket Entry 10 (Plaintiff's Brief); Docket Entry 12 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging a disability onset date of January 1, 2011. (Tr. 236-49.) Upon denial of those

applications initially (Tr. 154-71) and on reconsideration (Tr. 172-89), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 150-51). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing (Tr. 33-58), at which Plaintiff amended her alleged onset date to March 1, 2010 (see Tr. 35-36). The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act. (Tr. 15-30.) The Appeals Council thereafter denied Plaintiff's request for review, thus making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 1-6.)

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through March 31, 2010.

2. [Plaintiff] has not engaged in substantial gainful activity since March 1, 2010, the amended alleged onset date.

3. [Plaintiff] has the following severe impairment: lumbar facet arthropathy.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [Plaintiff] can lift and/or carry 10 pounds occasionally and less than 10

2

pounds frequently. [Plaintiff] can sit up to 6 hours in
an 8-hour workday and can stand and/or walk 2 hours in an
8-hour workday. [Plaintiff] cannot climb ladders, but
can occasionally balance and stoop. [Plaintiff] can
frequently crouch, kneel, crawl and climb stairs.

. . .

6. [Plaintiff] is unable to perform any past relevant
work.

. . .

10. Considering [Plaintiff]'s age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as
defined in the . . . Act, from January 1, 2007, through
the date of this decision.

(Tr. 20-26 (bold font and internal parenthetical citations
omitted).)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope
of . . . review of [such] a decision . . . is extremely limited."
Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has
not shown entitlement to relief under the extremely limited review
standard.

3

## A. **Standard of Review**

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to

4

whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," which "means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B. Assignment of Error

Plaintiff assigns error to the ALJ's alleged failure "to fully evaluate consultative examiner Dr. Gremillion's medical opinion regarding [Plaintiff]'s functional limitations." (Docket Entry 9 at 1.) In particular, Plaintiff contends that "[t]he ALJ did not address Dr. Gremillion's opinion that [Plaintiff] can sit for no more than 4 hours per day, that she requires use of a medically necessary cane to ambulate, and that she cannot use her feet to operate foot controls." (Docket Entry 10 at 5 (citing Tr. 24); see also Tr. 459-70 (Dr. Gremillion's consultative examination).) Therefore, Plaintiff argues that "[t]he ALJ failed to evaluate and assign weight to these portions of Dr. Gremillion's medical opinion, as required by 20 C.F.R. § 404.1527(c), and failed to explain why these portions of the opinion were not adopted, as

---

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

required by [Social Security Ruling 96-8p, <u>Assessing Residual Functional Capacity in Initial Claims</u>, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p")]." (Docket Entry 10 at 5-6.) According to Plaintiff, "[u]nder the standards of [Social Security Ruling 96-9p, <u>Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work</u>, 1996 WL 374185, at *7 (July 2, 1996) ("SSR 96-9P")], the portions of Dr. Gremillion's opinion disregarded by the ALJ without explanation would significantly impede [Plaintiff]'s ability to perform sedentary work." (Docket Entry 10 at 6.) Plaintiff's contentions do not warrant relief.

Consultative examiners do not constitute treating sources under the regulations, <u>see</u> 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and thus their opinions, as a general proposition, do not warrant controlling weight, <u>Turberville v. Colvin</u>, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished), <u>recommendation adopted</u>, slip op. (M.D.N.C. May 15, 2014). The ALJ must nevertheless evaluate consultative opinions using the factors outlined in 20 C.F.R. §§ 404.1527(c)(1) through (6) and 416.927(c)(1) through (6), and expressly indicate and explain the weight he or she affords to such opinions. <u>See</u> 20 C.F.R. §§ 404.1527(c), 416.927(c) ("<u>Regardless of its source</u>, [the ALJ] <u>will</u> evaluate <u>every</u> medical opinion [he or she] receive[s]"

9

and where an opinion does not warrant controlling weight, "[the ALJ must] consider all of the . . . factors [in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6)] in deciding the weight [to] give to any medical opinion." (emphasis added)); Social Security Ruling 96-5p, Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183, at *5 (July 2, 1996) (noting that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions").

The weight an ALJ ultimately assigns a medical opinion depends upon the degree by which "a medical source presents relevant evidence to support [the] opinion, particularly medical signs and laboratory findings," as well as the opinion's consistency "with the record as a whole." 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4); see also Craig, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."). Where a plaintiff's statements regarding her daily activities, medical treatment evidence, or other opinion evidence contradict a medical opinion, the ALJ may afford the opinion less weight. See Jones v. Astrue, 585 F. App'x 275, 276 (4th Cir. 2014) (upholding an ALJ's decision to assign little weight to physician's opinions because the opinions conflicted with other medical evidence and "[the

10

plaintiff]'s ability to drive, shop, attend church, and communicate effectively at the hearings").

Similarly, "[t]he [ALJ's] RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7; see also Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (holding that reviewing court generally "cannot determine if findings are supported by substantial evidence unless the [ALJ] explicitly indicates the weight given to all of the relevant evidence").

Here, when determining Plaintiff's RFC, the ALJ specifically considered Dr. Gremillion's consultative examination, explaining that:

> I find that the medical evidence in the file and the consultative examination by Dr. Gremillion demonstrate that [Plaintiff] has more significant limitations [than the State agency consultants determined, who limited Plaintiff to medium work]. While I have given Dr. Gremillion's opinion some weight, I have not accepted his conclusions that [Plaintiff] was limited to less than 8 hours of work per day. Similarly, I have not adopted the postural, handling and environmental limitations which are inconsistent with the [RFC]. I find that the objective medical evidence does not support these additional limitations. Taking into consideration [Plaintiff]'s testimony and the objective medical evidence, I find [Plaintiff]'s back impairment causes some limitations. However, such limitations have been adequately addressed by reducing [Plaintiff]'s exertional capacity to sedentary work and imposing some postural limitations.

11

(Tr. 24-25 (emphasis added); see also Tr. 22 (summarizing Dr. Gremillion's consultative examination and stating, "[t]he opinion of Dr. Gremillion was taken into consideration in formulating [Plaintiff's RFC]").)  On this basis, the ALJ clearly considered Dr. Gremillion's consultative examination, assigned weight to the examination, see 20 C.F.R. §§ 404.1527(c), 416.927(c), factored the examination into the analysis of Plaintiff's RFC, see SSR 96-8p, and explained the decision not to adopt certain portions of the examination.  As the ALJ stated, "[Plaintiff]'s testimony and the objective medical evidence" do not support all of Dr. Gremillion's conclusions.  (Tr. 24.)

The ALJ did not specifically discuss the rationale for rejecting Dr. Gremillion's conclusions that Plaintiff can sit for no more than 4 hours per day, that she requires use of a medically necessary cane to ambulate, and that she cannot use her feet to operate foot controls, as the ALJ's statement that she did "not adopt[] the postural, handling and environmental limitations" (Tr. 24) would not encompass limitations on sitting, the necessity of a cane, or the use of foot controls.[5]  However, such failure by the ALJ amounts to harmless error given the lack of record support for those limitations.  First, although Dr. Gremillion concluded

_____

[5]  The ALJ did explicitly acknowledge Dr. Gremillion's consultative examination and Plaintiff's reports regarding the use of a cane.  (See Tr. 21-23, 39, 47.)

Plaintiff's cane was "medically necessary" and that she could not use her feet to operate foot controls, he also determined that Plaintiff's extremities showed no signs of "clubbing, cyanosis, or edema," had a "well developed musculature that is symmetrical with good strength," and had no neurological deformities. (Tr. 461.) Moreover, Plaintiff conceded that no physician of record prescribed her a cane. (Tr. 39; see also Tr. 324-470 (record medical evidence establishing no doctor prescribed Plaintiff a cane).)[6]

Additionally, the record medical evidence establishes that Plaintiff's treating orthopedist, James E. Nitka, M.D., reviewed numerous structural and neurological tests of Plaintiff and determined that Plaintiff "walks with her right leg turned inward," which "seems to be exaggerated," that her "feet are normal," and that he "clinically do[es] not have any reason for why [Plaintiff] has the difficulties in walking that she does." (Tr. 412, 421.) Dr. Nitka further reported that Plaintiff's MRI "is really on the whole unremarkable," her "[m]otor is normal [in] both legs," and

_____

[6] At the hearing, Plaintiff suggested that her primary care physician, Jeffrey C. Hooper, MD, told her that she "probably needed to file for [her] disability and to get a cane because it was getting too much." (Tr. 39; see also Tr. 425 (Dr. Hooper's medical note acknowledging Plaintiff's use of cane).) However, the medical records from Dr. Hooper's office do not show any prescription for or statement explaining the medical necessity of an assistive walking device. (Tr. 340-61, 423-47, 452-56.) Further, Plaintiff's treating orthopedists did not prescribe Plaintiff an assistive walking device, except for instructing Plaintiff to use crutches while recovering from a fall. (Tr. 403-22, 448-51.)

"[t]here is not a great deal of abnormality in [Plaintiff's] MRI scan that would [reveal] that she has nerve source of pain even though she claims of weakness and paresthesias, [and she] tends to hold the right leg internally rotated." (Tr. 407; see also Tr. 21 (discussing Dr. Nitka's evaluations).) In terms of her gait, Dr. Nitka explained that, "[a]t least on first impression it appears as though [Plaintiff] has some type of rotational deformity of her femur or tibia[,] but on clinical examination it is apparent that her range of motion is actually fairly close to normal in her hips and in her legs[,] and that when [Plaintiff] is supine . . . her foot is in a normal[,] . . . external position of about 20 degrees on both sides so that the tendency to intoeing in this case seems to be a problem of either volitional internal rotation or rotation that she performs to decrease pain about her hips." (Tr. 421.)

In like manner, another orthopedic specialist, Fred K. Newton, M.D., reviewed Plaintiff's EMG and NCV findings and concluded that Plaintiff has an "[e]ssentially normal electrodiagositc study of both lower limbs" with "no significant electrodiagnostic evidence of nerve entrapment [or] lumbar radiculopathy." (Tr. 417 (emphasis omitted).) Similarly, James R. Hirsch, M.D., a brain and spine specialist, conducted a neurosurgical consultation with Plaintiff and concluded that Plaintiff's "[g]ait is done pretty normally, though [Plaintiff] favors mainly the right leg slightly" and that "[t]here is really no surgical intervention indicated." (Tr. 365-

14

66.)  In sum, the record medical evidence does not reveal that Plaintiff has any significant structural or neurological deformities in her lower extremities, such that the ALJ did not err in failing to adopt Dr. Gremillion's conclusions that Plaintiff requires a cane to walk and that she cannot use her feet to operate foot controls.[7]

---

[7] Plaintiff's Reply (Docket Entry 13) cites two cases for the proposition that "the [ALJ] committed a reversible error by failing to determine whether [Plaintiff]'s use of a cane is medically necessary and whether it limits her [RFC]" (id. at 1).  The first case, Holt v. Colvin, No. 12CV1001, 2015 WL 777657 (M.D.N.C. Feb. 24, 2015) (unpublished), involved a plaintiff who "was prescribed both a walker and a four-pronged cane [after the ALJ's decision]," id. at *4.  There, the court determined that such "later prescription" for a cane constitutes "new evidence that deserves consideration." Id.  Thus, the court remanded the case to the ALJ to consider the later prescribed cane. Id.  The second case Plaintiff cites, McLaughlin v. Colvin, No. 1:12-CV-621, Docket Entry 17 (M.D.N.C. July 25, 2014) (unpublished), involved circumstances where "[the plaintiff]'s physician assistant prescribed a 'walking cane'" and the plaintiff testified "that he always uses the cane," (id. at 3).  The court remanded the case to the ALJ after noting that the ALJ had failed to determine whether the "cane was medically required and failed to include [the plaintiff]'s use of a cane in both the RFC determination and in the hypothetical questions to the VE." Id.

In contrast to those two cases, here, Plaintiff testified that her doctors have not prescribed her a cane (Tr. 39) and that she does not use a cane "in the house" (Tr. 47).  Under these circumstances, the ALJ did not err in failing to specifically discuss the medical necessity of a cane or to include limitations in the RFC arising out of Plaintiff's use of a cane.  See SSR 96-9p, 1996 WL 374185, at *7 ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."); see also Mitchell v. Colvin, No. 13-CV-4594, 2014

15

The record similarly fails to support Dr. Gremillion's conclusion that Plaintiff can sit for no more than four hours in an eight-hour workday. As an initial matter, although Plaintiff testified that she can only sit "about 15, 20 minutes" before she needs to get up (Tr. 43), Dr. Gremillion concluded that Plaintiff can sit for three hours "[a]t [o]ne [t]ime without [i]nterruption" (Tr. 464). Moreover, Dr. Gremillion provided no explanation for why Plaintiff can sit for three consecutive hours, but not more than four total hours, in an eight-hour workday (see Tr. 459-70), and Plaintiff cites to no record medical evidence to support these conclusions or her own testimony about her sitting difficulties (see Docket Entries 9, 10, 13). As discussed above, the record medical evidence reveals that Plaintiff has no major structural or neurological deformities. In reference to her lower back and pelvic region where she reports feeling the most pain (Tr. 39,

WL 7051754, at *11-12 (N.D. Cal. Dec. 12, 2014) (unpublished) (concluding that, even though a non-treating medical examiner "found that the [plaintiff's] cane was 'medically necessary,'" the ALJ did not err in determining that "[the plaintiff] had a 'nonantalgic and unassisted gait'" where "the evidence of [the plaintiff]'s need for a cane was unclear, and substantial [record] evidence existed [to support the ALJ's determination]"); Demery v. Colvin, No. 2:13-CV-28-D, 2014 WL 2159347, at *3 (E.D.N.C. Apr. 28, 2014) (unpublished) (concluding that "the ALJ was not required to consider the impact of [the p]laintiff's use of a hand-held assistive device," where there was no "evidence documenting the medical necessity of a cane"); Stewart v. Colvin, No. 1:12-CV-39, 2013 WL 1979738, at *4-6 (N.D. Tex. May 14, 2013) (unpublished) (upholding as supported by substantial evidence ALJ's decision not to include limitations in RFC based on the plaintiff's use of cane, where no evidence existed of medical necessity).

16

406), Plaintiff's CT scan revealed a "[n]ormal bony pelvis" with "[n]o fracture or dislocation" as "the sacrum/coccyx appears intact," her "lower lumbar spine is within normal limits," and her "[b]ilateral hip joint spaces are preserved." (Tr. 408-09.) Upon review, Dr. Nitka reported "that [Plaintiff's] MRI scan of [her] lumbar spine shows no significant nerve compression and [that the] EMG nerve conduction studies seem to back this up." (Tr. 450.) For pain treatment, Dr. Nitka suggested that "steroid injections in [Plaintiff's] joints do seem to be of benefit." (Id.) Similarly, Dr. Newton reported that, after administering a facet injection to Plaintiff's right side, Plaintiff reported that it "really helped her more than any other shot that she received anywhere else." (Tr. 406.) On this basis, the ALJ determined that Plaintiff "received appropriate treatment to address her ongoing pain symptoms," and that her "symptoms improved significantly with facet injections." (Tr. 24.)

Moreover, the State agency consultants found Plaintiff capable of performing "medium work," rather than only "sedentary work." (Tr. 168-69, 186-87.) In particular, the state agency consultants determined, inter alia, that Plaintiff can lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, and occasionally climb ladders. (Tr. 168, 186.) The ALJ considered these exertional limitations against the backdrop of the other record medical evidence, including Dr.

17

Gremillion's consultative examination, and varied downward, concluding that Plaintiff "can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently," "stand and/or walk 2 hours in an 8-hour workday," and never "climb ladders." (Tr. 23.) Notably, however, based on that same medical evidence, the ALJ adopted the state agency consultants' conclusions that Plaintiff can "sit up to 6 hours in an 8-hour workday and can stand and/or walk 2 hours in an 8-hour workday," "occasionally balance and stoop," and "frequently crouch, kneel, crawl, and climb stairs." (Compare Tr. 24, with Tr. 186-87); see also 20 C.F.R. §§ 404.1527(e), 416.927(e) ("[ALJ's] must consider findings and other opinions of State agency medical . . . consultants . . . as opinion evidence" because they are "highly qualified" and "experts in Social Security disability"); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (noting that medical opinions that are consistent with the record as a whole deserve more weight). The state agency consultants' opinions, thus, support the ALJ's conclusion that Plaintiff's postural and exertional limitations do not rise to the level she alleges, particularly as to sitting (see, e.g., Tr. 43).

Equally, as the ALJ observed (Tr. 24), Plaintiff's testimony describing her daily activities does not support all of Dr. Gremillion's prescribed limitations. In that regard, the ALJ highlighted that "[Plaintiff] testified [at the hearing that] she lives in [her] home with her three grandkids. The youngest

18

grandchild is two years old and is always home with [Plaintiff].
[Plaintiff] assists the two year old boy alone throughout the
day. . . . [Plaintiff]'s activities of daily living include[]
cleaning the house, sweeping and mopping." (Tr. 23.)[8]  When
factoring Plaintiff's testimony into the RFC computation, the ALJ
stated:

> There is no evidence [Plaintiff]'s lumbar disease
> significantly impairs her functional abilities as
> [Plaintiff] reported she could take care of her personal
> needs, prepare simple meals, sweep, wash clothes, shop in
> stores for food, sit and socialize with family and
> friends. Further, Plaintiff testified she takes care of
> her three grandchildren and watches the two year old
> every day all day.

(Tr. 24.)

As the ALJ properly explained, Plaintiff's testimony of an
active daily schedule that involves taking care of her three
grandchildren by herself, including "watch[ing] the two year old
every day all day" (id.), conflicts with those portions of Dr.
Gremillion's consultative examination assessing Plaintiff with
"additional limitations" (id.). See Johnson v. Barnhart, 434 F.3d
650, 653 (4th Cir. 2005) (explaining that, "[w]here conflicting
evidence allows reasonable minds to differ as to whether a claimant
is disabled, the responsibility for that decision falls on the

---

[8] At the May 10, 2013 hearing, Plaintiff testified that she
took her three grandchildren into her home beginning June 27, 2012,
and that at the time of the hearing the youngest grandchild was
three years old.  (Tr. 37-38.)

[ALJ]" (internal quotation marks omitted)). Indeed, the regulations mandate that the ALJ accord significantly less weight to opinions derived from Dr. Gremillion's consultative examination that conflict with other substantial evidence. See Craig, 76 F.3d at 590.

Under these circumstances, Plaintiff's testimony and the objective medical evidence provide "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that the ALJ properly discounted those portions of Dr. Gremillion's findings not adopted in the RFC. Richardson, 402 U.S. at 390 (internal quotation marks omitted). In other words, substantial record evidence exists to uphold the ALJ's decision rejecting Dr. Gremillion's position that Plaintiff cannot sit for more than four hours in an eight-hour workday, walk more than two feet without a cane, or use her feet to operate foot controls. Moreover, given the state of the record, any error the ALJ may have committed by not specifically discussing each of these additional limitations was harmless. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

## CONCLUSION

Plaintiff has not established an error warranting remand.

20

**IT IS THEREFORE RECOMMENDED** that the Plaintiff's Motion for Judgment Reversing the Decision of the Commissioner of Social Security (Docket Entry 9) should be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) should be granted, and that this action should be dismissed with prejudice.

                              /s/ L. Patrick Auld
                              **L. Patrick Auld**
                    **United States Magistrate Judge**

April 20, 2016